UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

ALEXANDRA GLOBAL MASTER FUND, LTD.,

                           Plaintiff,           06 Civ. 5383 (JGK)

           - against -           OPINION AND ORDER

IKON OFFICE SOLUTIONS, INC.,

                        Defendant.
————————————————————————————————

JOHN G. KOELTL, District Judge:

In this action, a former holder of 5% convertible notes issued by IKON Office Solutions, Inc. ("IKON") claims that IKON committed federal securities fraud and common law fraud when it repurchased those notes at a negotiated price of 99.5% of their face value without revealing that it was planning to launch a new private placement and use the proceeds to exercise its right to redeem all of the outstanding 5% notes for 102% of their face value. The plaintiff, the investment fund Alexandra Global Master Fund, Ltd. ("Alexandra"), alleges that IKON's silence about its plans constituted an omission of material, non-public information which induced Alexandra to sell its notes for $805,250 less than IKON would have been required to pay upon exercising its redemption right pursuant to the governing Indenture.

Alexandra asserts two causes of action: (1) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R.
§ 240.10b-5; and (2) common law fraud.  IKON moves to dismiss
the Complaint pursuant to Federal Rules of Civil Procedure 9(b)
and 12(b)(6), arguing that the securities fraud claim cannot
stand because IKON had no duty to disclose the omitted
information about its plans to redeem the notes and that the
information was not material in any event.  IKON argues that the
common law fraud claim fails for the same reasons and, in any
event, the Court should decline to take supplemental
jurisdiction over that claim after dismissing the federal
securities fraud claim.

## I.

### A.

On a motion to dismiss pursuant to Rule 12(b)(6), the
allegations in the Complaint are accepted as true.  Grandon v.
Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In
deciding a motion to dismiss, all reasonable inferences must be
drawn in the plaintiff's favor.  Gant v. Wallingford Bd. of
Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886
F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to
dismiss is "not to weigh the evidence that might be presented at
trial but merely to determine whether the complaint itself is

2

legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the Court is not required to accept legal conclusions asserted in the Complaint. <u>See</u> <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002); <u>Barile v. City of Hartford</u>, 386 F. Supp. 2d 53, 54 (D. Conn. 2005).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>see also</u> <u>Taylor v. Vermont Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002); <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991); <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991); <u>VTech Holdings Ltd. v. Lucent Techs., Inc.</u>, 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001).

**B.**

The following facts alleged in the Complaint are accepted as true for the purpose of deciding this motion to dismiss.

Alexandra purchased from IKON $32,000,000 in aggregate principal amount of 5% Convertible Subordinated Notes (the "Notes") due May 1, 2007 in 2004. (Compl. ¶ 8.) The Indenture governing the Notes provides that IKON could redeem the Notes in whole or in part, and that if it elected to redeem them between May 9, 2005 and April 30, 2006, it would be obligated to pay the Noteholders 102% of the principal amount together with accrued interest. (Id. ¶¶ 9-10; see also Indenture §§ 2.3, 11.1, attached as Ex. 1 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.[1]) The Indenture and the Notes were governed by New York law. (Indenture § 1.12.)

In May and June of 2005, Kiera Konis, an employee of Alexandra's asset manager, asked Kathleen Burns, IKON's Treasurer, whether IKON had any interest in repurchasing the Notes Alexandra held. (Compl. ¶ 11.) Burns responded that IKON was not in the market to repurchase its securities at that time because "it was involved in another undisclosed 'project.'"

---

[1] While the plaintiff did not attach the Indenture to its Complaint, it plainly relied on the terms of the Indenture in bringing this action (see Compl. ¶¶ 9-10, 16, 27, 42, 49), which renders the Indenture "integral" to the Complaint. The Court can therefore consider the Indenture without converting the motion to one for summary judgment. See Chambers, 282 F.3d at 153 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

(Id. ¶ 12.)  On July 18, 2005, Konis sent an email to Burns
again asking whether IKON had an interest in repurchasing some
of its 5% convertible bonds.  (Id. ¶ 13.)  Several minutes
later, Burns responded by email to say that IKON had no interest
in repurchasing.  (Id. ¶ 14.)

The next day, July 19, 2005, Burns sent an email to Konis
that said, "Kiera--can you tell me where you would be interested
in selling if we are in the market?"  (Id. ¶ 15.)  Konis then
called Burns and told her Alexandra sought to sell its Notes at
their redemption price, 102% of their face value.  (Id. ¶ 16.)
Burns rejected this offer.  (Id.)

On July 20, 2005, Konis sent an email to Burns offering to
sell the Notes at "around the 101 level."  (Id. ¶ 17.)  Burns
told Konis in a subsequent phone call that IKON had just
repurchased Notes from another investor at 99.75% of their face
value.  Konis asked whether IKON would buy Alexandra's Notes at
that price.  (Id. ¶ 18.)  On August 5, 2005, negotiations
continued.  Burns offered for IKON to buy about half of the
Notes at 99.75%, and Konis eventually counteroffered to sell
Alexandra's entire holding of the Notes at 99.5%.  (Id. ¶¶ 20-
23.)  Burns confirmed that IKON would accept this offer, and the
repurchase closed on August 10, 2005 with IKON paying Alexandra
$32,048,950 for all of its Notes.  (Id. ¶¶ 24-25.)

On September 8, 2005, IKON issued a press release stating that it was

> Launching a private placement of $225 million aggregate principal amount of senior notes due 2015. IKON anticipates using the net proceeds from the private placement to redeem all of its outstanding 5% Convertible Subordinated Notes due 2007 and for general corporate purposes.

(Id. ¶ 26.)  Konis never disclosed IKON's intent to redeem the Notes during the negotiation to repurchase Alexandra's holdings, and Alexandra did not learn of IKON's intentions until the September 8, 2005 press release was issued.  (Id. ¶ 28.) Alexandra alleges that during a telephone conference among several of its representatives and Burns on September 21, 2005, Burns said that IKON's plan to redeem the Notes had been in "various stages of development" since May 2005.  (Id. ¶ 29.)


## II.

In order to state a claim brought pursuant to Section 10(b) and Rule 10b-5,[2] a plaintiff must sufficiently allege that "in

---

[2]  Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides in relevant part:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
>                          . . . .
>      (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bailey Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may

connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused [plaintiff] injury." Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000) (alteration in original) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 266 (2d Cir. 1996)); see also Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001) (citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996)); Marcus v. Frome, 329 F. Supp. 2d 464, 471-472 (S.D.N.Y. 2004).

IKON moves to dismiss Alexandra's Section 10(b) and Rule 10b-5 claim on the grounds that Alexandra has not adequately alleged a duty to disclose the allegedly omitted information and that the information was not material. These arguments are addressed in turn.

---

prescribe as necessary or appropriate in the public interest or for the protection of investors.
Similarly, Rule 10b-5, promulgated under Section 10(b) and codified at 17 C.F.R. § 240.10b-5, provides:
     It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
          (a) To employ any device, scheme, or artifice to defraud,
          (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
          (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**A.**

IKON argues that the undisclosed information complained of here--IKON's alleged "intention to redeem the [Notes] before purchasing the [Notes] from [Alexandra]" (Compl. ¶ 33)--does not amount to a material omission because this "intention" was contingent on IKON raising money through a new private placement and because a reasonable investor would have been aware that IKON would consider exercising its available redemption rights.

For an omission to meet the materiality requirement under Rule 10b-5, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)); see also Ganino v. Citizens Utils. Co., 228 F.3d 154, 161-62 (2d Cir. 2000). Because materiality depends on the significance the reasonable investor would place on the withheld information, Basic, 485 U.S. at 240, it presents a mixed question of law and fact that generally should be presented to a jury. Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999); see also Ganino, 228 F.3d at 162. "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) . . . on the ground that the alleged . . . omissions are not material unless they are so

obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman, 754 F.2d at 1067.

The Complaint alleges that IKON was planning to exercise its power under the Indenture to redeem its Notes, which would require it to pay the Noteholders a two-percent premium, even while negotiating the repurchase of Alexandra's Notes at less than face value.  Alexandra contends, based on remarks allegedly made during a telephone call with IKON's treasurer on September 21, 2005, that IKON's plan to redeem the Notes had been in some stage of development since at least May 2005, and the repurchase of Alexandra's Notes was not consummated until August 10, 2005. Alexandra has raised the possibility that, if IKON's plan was sufficiently well developed by August 2005, a reasonable investor would have found the pending redemption plan significant.  It is unlikely that an investor seeking to liquidate securities would be uninterested in the fact that it could receive a significant premium by awaiting a redemption date rather than immediately negotiating an individualized repurchase price at or below the face value of the securities. For these reasons, the Complaint cannot be dismissed at this preliminary stage for lack of a sufficient allegation of materiality.

**B.**

**1.**

When an allegation of securities fraud in violation of Section 10(b) and Rule 10b-5 is based upon a nondisclosure of material information, "there can be no fraud absent a duty to speak." Chiarella v. United States, 445 U.S. 222, 235 (1980); see also United States v. Chestman, 947 F.2d 551, 564-66 (2d Cir. 1991) (en banc).  Such a duty does not arise from the mere possession of material, nonpublic information.  Chiarella, 445 U.S. at 235; Dirks v. SEC, 463 U.S. 646, 654 (1983).  "Rather, a duty to disclose or abstain arises only from 'a fiduciary or other similar relation of trust and confidence between [the parties to the transaction].'"  Chestman, 947 F.2d at 565 (alteration in original) (quoting Chiarella, 445 U.S. at 228); see also Dirks, 463 U.S. at 654.

The Court looks to securities fraud precedents and the common law in determining whether a relationship carries a "fiduciary or other similar relation of trust" that imposes a duty to speak.  See Chestman, 947 F.2d at 568.  Thus, certain fiduciary relationships, such as that between corporate insiders and shareholders, Dirks, 463 U.S. at 655; Chestman, 947 F.2d at 568, require that the fiduciary disclose material non-public information or abstain from trading.  In Chiarella and Dirks, however, the Supreme Court emphasized that a mere disparity of

information is insufficient to impose a duty to disclose.
Dirks, 463 U.S. at 657 n.16 ("In Chiarella, we noted that
formulation of an absolute equal information rule 'should not be
undertaken absent some explicit evidence of congressional
intent.'"  (quoting Chiarella, 445 U.S. at 233)).

Where a complaint does not allege any basis for a duty to
disclose, a claim based upon nondisclosure of material
information cannot be sustained.  See, e.g., In re Parmalat
Secs. Litig., 376 F. Supp. 2d 472, 515 & n.213 (S.D.N.Y. 2005)
(dismissing Section 10(b) claim based on omissions where the
complaint alleges no basis for a duty to disclose); Fezzani v.
Bear, Stearns & Co., 384 F. Supp. 2d 618, 640 (S.D.N.Y. 2004)
(same); Gershon v. Wal-Mart Stores, Inc., 901 F. Supp. 128, 131-
32 (S.D.N.Y. 1995) (same).

### 2.

IKON contends that the relationship between a corporate
issuer and its convertible noteholders is not a fiduciary or
other similar relation of trust and confidence, but is simply a
contractual relationship governed by the terms of the debt
instrument.  IKON thus submits that Alexandra cannot establish
under Chiarella and its progeny that IKON had a duty to disclose
nonpublic information about its future plans.  Alexandra argues,
however, that Chiarella's fiduciary relationship requirement set

out above does not apply universally in insider trading cases, and that an alternative rule imposes a duty to disclose on an issuer such as IKON any time it trades in its own securities. While there appears to be no post-Chiarella case in this circuit that has squarely decided whether an issuer has a duty to disclose material non-public information to its convertible debenture holders, the most analogous authorities indicate that there is no fiduciary or other similar relation of trust and confidence between the parties giving rise to a duty to disclose under Chiarella. Alexandra has also failed to allege any other legally cognizable basis for a duty to disclose.

It is well established that corporations do not have a fiduciary relationship with their unsecured creditors, including debt security holders. The relationship is contractual rather than fiduciary. Lorenz v. CSX Corp., 1 F.3d 1406, 1417 (3d Cir. 1993) (New York law); Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 98 Civ. 6907, 2000 WL 335557, at *11 (S.D.N.Y. Mar. 30, 2000) (New York law); Metro. Secs. v. Occidental Petroleum Corp., 705 F. Supp. 134, 141 (S.D.N.Y. 1989) (New York law); Simons v. Cogan, 549 A.2d 300, 303-04 (Del. 1988) (Delaware law), aff'g 542 A.2d 785 (Del. Ch. 1987) (Allen, C.); see also Metro. Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1524-25 (S.D.N.Y. 1989) (finding that a New York court would agree with Simons that corporations do not owe

fiduciary duties to debtholders)[3]; Harvey L. Pitt & Karl A. Groskaufmanis, A Tale of Two Instruments:  Insider Trading in Non-Equity Securities, 49 Bus. Law. 187, 213 (1993) ("[T]he prevailing notion of debt securities expressly rules out the fiduciary relationship that gives rise to a duty to abstain or disclose.").

The majority of courts have found that this rule applies even to convertible noteholders, who retain the contractual power to convert their notes into shares of the issuer's stock. See Lorenz, 1 F.3d at 1417; Page Mill, 2000 WL 335557 at *11 (citing Parkinson v. West End St. Ry., 53 N.E. 891, 892 (1899) (Holmes, J.)); Simons, 549 A.2d at 303-04.  But see In re Worlds of Wonder Secs. Litig., No. C 87 5491, 1990 WL 260675, at *4-*5 & n.6 (N.D. Cal. Oct. 19, 1990).[4]  As the Delaware Supreme Court explained, in a decision followed by New York courts:  "In sum,

---

[3]  An exception to this rule arises in the case of an insolvent corporation.  See Page Mill, 2000 WL 335557 at *11 n.8; Simons, 549 A.2d at 302 (quoting Harff v. Kerkorian, 324 A.2d 215, 222 (Del. Ch. 1974)). Alexandra has not alleged that IKON was insolvent at the time of the relevant conduct, and this exception therefore does not apply to Alexandra's Complaint.

[4]  The Worlds of Wonder court did not cite to any of the cases noted above which have held that issuers owe no fiduciary duties to convertible bondholders, and it cited in support only Pittsburgh Terminal Corp. v. Baltimore & Ohio Railroad Co., 680 F.2d 933 (3d Cir. 1982), which is distinguished below in note 10.  The Worlds of Wonder decision did acknowledge the applicability of the Chiarella rule that a duty to disclose arises only when a fiduciary or other relationship of trust exists.  See 1990 WL 260675 at *4.  The district court later dismissed the insider trading claims on summary judgment, In re Worlds of Wonder Secs. Litig., 814 F. Supp. 850, 872 (N.D. Cal. 1993), and the Ninth Circuit Court of Appeals affirmed this dismissal in relevant part, 35 F.3d 1407 (9th Cir. 1994).

a convertible debenture represents a contractual entitlement to the repayment of a debt and does not represent an equitable interest in the issuing corporation necessary for the imposition of a trust relationship with concomitant fiduciary duties." Simons, 549 A.2d at 303.

One unreported decision from this district (but applying Delaware law) did find that convertible debenture holders possessed a sufficient equity interest in the issuing corporation to justify the imposition of fiduciary duties.  See Green v. Hamilton Int'l Corp., 76 Civ. 5433, 1981 U.S. Dist. LEXIS 13439, at *14-*17 (S.D.N.Y. July 14, 1981).  However, the Green decision fails to support a fiduciary obligation owed to Alexandra for several reasons, discussed below.

In Green, the jury found that defendant Hamilton International Corp. had breached its fiduciary duties by, among other things, failing to disclose merger negotiations and thereby causing the plaintiffs to redeem their convertible debentures rather than convert them to take advantage of a favorable merger offer.[5]  See id. at *1, *16-*17; see also Green v. Hamilton Int'l Corp., 437 F. Supp. 723, 725-26 (S.D.N.Y. 1977).  In deciding the defendant's motion for judgment notwithstanding the verdict, Judge Lowe endeavored to apply

---

[5]  The jury also found that the defendants had not violated the federal securities laws or committed common law fraud.  Green, 1981 U.S. Dist. LEXIS at *1.

Delaware corporation law but found little clear authority in the cases, relying primarily on the Harff v. Kerkorian, 347 A.2d 133 (Del. 1975), aff'g in part, rev'g in part, 324 A.2d 215 (Del. Ch. 1974).  See Green, 1981 U.S. Dist. LEXIS at *8-*17.  She held that the jury charge was not erroneous in asserting that the issuer Hamilton owed a fiduciary duty to holders of its convertible debentures.  Id. at *14.  However, Judge Lowe noted the "hybrid nature" of a convertible debenture, and she found that a contract analysis would apply to any wrongs that impacted the debtor-creditor relationship while wrongs that "impinged upon the equity aspects" of the debentures would implicate the obligations of a fiduciary relationship.  Id.  She concluded that the conversion option of the debentures was an "equitable aspect" and that a Delaware court would recognize a fiduciary obligation under the facts of the case.  Id. at *16-*17.[6]

--------

[6]  In denying a motion to dismiss the common law fraud claim earlier in the Green litigation, Judge Tenney also made reference to potential fiduciary duties owed by Hamilton in a footnote, although he assumed the absence of a fiduciary relationship for the purpose of deciding the motion.  See Green, 437 F. Supp. at 729 & n.4.  Judge Tenney wrote:
> This is not to say that no breach of fiduciary duty occurred if the facts are as plaintiffs have alleged.  As holders of convertible debentures, plaintiffs were part of "the entire community of interest in the corporation--creditors as well as stockholders" to whom the fiduciary duties of directors and controlling shareholders run.

Id. at 729 n.4 (citing Pepper v. Litton, 308 U.S. 295, 307 (1939)).  He went on to assert that the Court of Appeals for the Second Circuit had recognized the "special nature" of convertible debentures in its decision in Van Gemert v. Boeing Co., 520 F.2d 1373, 1385 (2d Cir. 1975).

However, the Van Gemert court found that Boeing was liable for failing to give reasonable notice of its decision to redeem its convertible debentures on a contract theory rather than for any breach of a fiduciary duty.  Id. at 1383 ("The duty of reasonable notice arises out of the contract

Judge Lowe's Green decision is no longer good law to the extent that it holds that Delaware recognizes a fiduciary duty owed by an issuer to convertible debenture holders.  The Delaware Supreme Court considered and expressly rejected the Green decision's "expansive theory" in its later decision in Simons.  549 A.2d at 303-04.  Moreover, more recent cases have rejected the existence of a fiduciary relationship under New York law between a corporation and its convertible debenture holders.  See Lorenz, 1 F.3d at 1417; Page Mill, 2000 WL 335557 at *11.  Furthermore, even under Judge Lowe's analysis, any fiduciary duty IKON owed would not reach Alexandra in this case because Alexandra makes no allegation that IKON's alleged nondisclosure affected its conversion rights, and therefore the alleged wrong does not "impinge[] upon the equity aspects" of Alexandra's Notes.  Green, 1981 U.S. Dist. LEXIS at *14.  The Complaint therefore provides no basis for finding that IKON owed

---

between Boeing and the debenture holders . . . .").  A later panel reviewing the damages award in the same case clarified that the relief granted was based on an application of the implied covenant of good faith and fair dealing that applies to all contracts in New York.  See Van Gemert v. Boeing Co., 553 F.3d 812, 815 (2d Cir. 1977).  Pepper does not support the existence of a fiduciary duty by a corporation to its debenture holders.  Pepper found that a controlling shareholder had a fiduciary duty to a corporation such that his salary claim could properly be disallowed in a bankruptcy proceeding.  The Court found that the fiduciary obligation could be enforced by the trustee in bankruptcy because the "fiduciary obligation" was designed for the protection of the entire community of interests in the corporation.  To the extent that Pepper can be read for the existence of fiduciary duties owed to creditors, it falls within the exception for insolvent corporations discussed supra in note 3.  Pepper, 308 U.S. at 306-07; see also Simons, 542 A.2d at 789 n.7.

fiduciary or similar duties to Alexandra that would give rise to a duty to disclose under Chiarella.

Alexandra argues that Chiarella does not impose a strict requirement that a fiduciary or similar relationship must exist before liability under Rule 10b-5 based upon nondisclosure can arise.  Alexandra relies primarily on Judge Tenney's decision denying a motion to dismiss a securities fraud claim earlier in the Green litigation to establish that an issuer of convertible notes has a duty to disclose material nonpublic information or to abstain from repurchasing its convertible notes.  See Green, 437 F. Supp. at 728.  Judge Tenney did find that the issuer had a "duty to disclose" a pending merger offer to its convertible debenture holders, relying on the Court of Appeals for the Second Circuit's rule announced in the seminal insider-trading case SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 848 (2d Cir. 1968) (en banc).  The Texas Gulf Sulphur court announced:

> [A]nyone in possession of material inside information
> must either disclose it to the investing public, or,
> if he is disabled from disclosing it in order to
> protect a corporate confidence, or he chooses not to
> do so, must abstain from trading in or recommending
> the securities concerned while such inside information
> remains undisclosed.

401 F.2d at 848.  Judge Tenney found that this rule applied not only to corporate "insiders" but to a corporation itself when it traded in its own securities by redeeming its debentures. Green, 437 F. Supp. at 728-29.

Without the benefit of the Supreme Court's more recent pronouncements on insider trading, Judge Tenney's <u>Green</u> decision would appear to support Alexandra's position.  However, his broad application of the <u>Texas Gulf Sulphur</u> "disclose or abstain" rule would be untenable today after the Supreme Court refined the basis of the duty to disclose in <u>Chiarella</u> and <u>Dirks</u>, as outlined above.  <u>Texas Gulf Sulphur</u> has never been overruled and its holding remains good law even after <u>Chiarella</u> and <u>Dirks</u> because it involved holders of equity securities to whom corporate insiders plainly owe fiduciary duties.  However, <u>Chiarella</u> and <u>Dirks</u> clarified that the "disclose or abstain" rule most famously stated in <u>Texas Gulf Sulphur</u> arises not from a mere asymmetry of information, but only when the defendant owes "a fiduciary or other similar relation of trust and confidence."  <u>Chiarella</u>, 445 U.S. at 228;[7] <u>accord</u> <u>Dirks</u>, 463 U.S. at 654, 657 & n.16; <u>see also</u> VIII Louis Loss & Joel Seligman, <u>Securities Regulation</u> 3565-66 & n.279 (3d ed., rev. 2004) ("<u>Chiarella</u> emphatically did reject the 'egalitarian' or parity-of-information theory" espoused by the Second Circuit Court of

---

[7]   In <u>Chiarella</u>, the Supreme Court cited <u>Texas Gulf Sulphur</u> and numerous other cases before reaching its summary conclusion:

> Thus, administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b) despite the absence of statutory language or legislative history specifically addressing the legality of nondisclosure.  But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction.

<u>Chiarella</u>, 445 U.S. at 230.

Appeals' decision and earlier articulated in <u>Texas Gulf
Sulphur</u>); R. René Pengra, Note, <u>Insider Trading, Debt
Securities, and Rule 10b-5:  Evaluating the Fiduciary
Relationship</u>, 67 N.Y.U. L. Rev. 1354, 1361 & n.41 (1992); Peter
J. Henning, <u>Between Chiarella and Congress:  A Guide to the
Private Cause of Action for Insider Trading Under the Federal
Securities Laws</u>, 39 U. Kan. L. Rev. 1, 15-17 (1990).  The Court
of Appeals for the Second Circuit, sitting en banc, has stated
unequivocally that the rationale expressed in <u>Chiarella</u> and
<u>Dirks</u> now governs the application of the "disclose or abstain"
rule under the traditional theory of insider trading liability
pursuant to Rule 10b-5.  <u>See</u> <u>Chestman</u>, 947 F.2d at 564-66.[8]

Alexandra cites a variety of more recent decisions that
have included language reflecting the "disclose or abstain" rule
articulated in <u>Texas Gulf Sulphur</u>.  <u>See, e.g.</u>, <u>Castellano v.
Young & Rubicam, Inc.</u>, 257 F.3d 171, 179 (2d Cir. 2001); <u>Shaw v.
Digital Equip. Corp.</u>, 82 F.3d 1194, 1203-04 (1st Cir. 1996),
<u>superceded by statute on other grounds</u>, as noted in <u>Greebel v.
FTP Software, Inc.</u>, 194 F.3d 185, 197 (1st Cir. 1999); <u>McCormick
v. The Fund American Cos.</u>, 26 F.3d 869, 876 (9th Cir. 1994);

---

[8]  Another theory of liability, the "misappropriation theory," reaches
certain outsiders who make use of material nonpublic information obtained in
breach of a fiduciary relationship, even where fiduciary duties are not owed
to the outsiders' trading partner.  <u>See</u> <u>United States v. O'Hagan</u>, 521 U.S.
642, 652-53 (1997); <u>see also</u> <u>Chestman</u>, 947 F.2d at 566.  The misappropriation
theory does not apply to the facts of this case and hence is not discussed
further.

W. Hemisphere Group, Inc. v. Stan West Corp., 81 Civ. 4826, 1984 WL 1265, at *6 (S.D.N.Y. Nov. 26, 1984).  Yet none of these opinions supports the broad proposition Alexandra attributes to them.  To the extent that these cases assert that Rule 10b-5 applies to corporations themselves as well as insiders such as directors when a fiduciary relationship exists, they are uncontroversial.  See Castellano, 257 F.3d at 179 ("It logically follows that just as knowledgeable corporate insiders have a fiduciary duty to disclose material facts when entering stock deals with outsiders, so do closed corporations buying their own stock."); Shaw, 82 F.3d at 1203; McCormick, 26 F.3d at 876; W. Hemisphere, 1984 WL 1265 at *6; see also Loss & Seligman, supra, at 3611.  The cases each applied this rule in the context of corporations trading with their stockholders, to whom they plainly owed fiduciary duties, rather than with their creditors. See Castellano, 257 F.3d at 179; Shaw, 82 F.3d at 1203; McCormick, 26 F.3d at 876; W. Hemisphere, 1984 WL 1265 at *3-*6.[9] In short, none of these cases supports the application of a blanket "disclose or abstain" rule in the absence of a fiduciary

---

[9]   The conduct at issue in W. Hemisphere also involved the repayment of a loan which was provided in part in exchange for shares of stock and for a stock option.  The plaintiffs surrendered shares of stock in connection with the loan repayment, and there appears to have been no question that the defendants owed fiduciary duties on account of the stock transaction.  1984 WL 1265 at *6-*7.  In any event the W. Hemisphere court acknowledged that Chiarella governs the "duty to disclose" requirement for Rule 10b-5 liability.  Id. at *6.

duty or similar relationship of trust and confidence, as
required by Chiarella and Dirks.[10]

Alexandra also argues that Chiarella and Dirks should be
limited to their facts, which involved "outsiders" or "tippees"
rather than corporate issuers of securities.  While Alexandra
asserts that post-Chiarella cases have shown that the Supreme
Court did not limit the duty to disclose to cases where a
fiduciary or other relationship of trust and confidence exists,
the cases Alexandra marshals provide scant if any support.  In
Deutschman v. Beneficial Corp., 841 F.2d 502, 506 (3d Cir.
1988), the Third Circuit Court of Appeals noted that the
district court had erred in dismissing a stock option
purchaser's federal securities claim in reliance on Chiarella
and Dirks.  However, Deutschman involved affirmative
misrepresentations rather than insider trading on the basis of

_____

    [10]  The case Pittsburgh Terminal Corp. v. Baltimore & Ohio Railroad Co.,
680 F.2d 933 (3d Cir. 1982), which Alexandra also cites, lends no support to
Alexandra's position.  The court based its holding that a railroad was liable
to its convertible debenture holders under Rule 10b-5 for failing to provide
notice of a special dividend on the fact that the railroad violated the
specific notice provision of SEC Rule 10b-17, 17 C.F.R. § 240.10b-17.  See
680 F.2d at 943-45 (Garth, J., concurring); 680 F.2d at 946 (Adams, J.,
dissenting).  In the lead opinion, Judge Gibbons recognized other bases for a
duty to disclose, including the New York Stock Exchange listing agreement,
the Maryland law of fiduciary obligations, and New York contract law, id. at
941-42, but the other two panel members expressly declined to recognize these
other sources of a duty.  The Court of Appeals for the Third Circuit's later
analysis in Lorenz, a decision arising from the same litigation, laid to rest
any lingering vitality Judge Gibbons's recognition of fiduciary duties might
have once had.  See Lorenz, 1 F.3d at 1417, 1418 ("It is well-established
that a corporation does not have a fiduciary relationship with its debt
security holders, as with its shareholders. . . . A corporation's obligations
toward its debentureholders are defined by the terms of the indenture, and
section 10(b) imposes no additional duties.").

material nonpublic information, and the Court of Appeals simply
noted that Chiarella and Dirks cannot "be construed to require
the existence of a fiduciary relationship between a section
10(b) defendant and the victim of that defendant's affirmative
misrepresentation." Id. at 506.  The court carefully explained
the difference between the analytically distinct practices of
insider trading (like that alleged in Chiarella and Dirks) and
affirmative misrepresentation, only the latter of which was at
issue in the case.  See id. at 504-05; see also Loss & Seligman,
supra, at 3621 ("[T]he courts have long recognized that an
optionholder may bring a Rule 10b-5 claim against an insider for
affirmative misrepresentations.").

     Alexandra also cites a decision by the Ninth Circuit Court
of Appeals to suggest that the test for whether there is a duty
to disclose after Chiarella is a flexible one.  See Jett v.
Sunderman, 840 F.2d 1487, 1492-93 (9th Cir. 1988).  The Jett
court, citing its earlier decision in White v. Abrams, 495 F.2d
724, 735-36 (9th Cir. 1974), listed five factors relevant to
determining a defendant's duty to disclose:  "(1) the
relationship of the parties, (2) relative access to information,
(3) the benefit that the defendant derives from the
relationship, (4) the defendant's awareness that the plaintiff
was relying upon the relationship in making his investment
decision, and (5) the defendant's activity in initiating the

22

transaction." Jett, 840 F.2d at 1493.  The White court culled these factors to guide courts in establishing the contours of the duty to disclose while simultaneously holding that no separate "scienter" element need be alleged to establish Rule 10b-5 liability.  See White, 495 F.2d at 734-36.  The Supreme Court later rejected the White court's holding that "scienter" was not a separate element in Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 & n.12 (1976), and an en banc panel of the Ninth Circuit Court of Appeals later "put to rest the 'flexible duty standard' announced in White," criticizing it as the kind of negligence standard the Supreme Court had expressly disapproved in Hochfelder.  Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1570 & nn.9-10 (9th Cir. 1990) (en banc); see also VIII Loss & Seligman, supra, at 3601 n.331.  Furthermore, the Second Circuit Court of Appeals has never applied the five-factor test summarized in Jett, see Gershon, 901 F. Supp. at 132 n.8, and Jett's reliance upon the parties' "relative access to information" appears to conflict with Chiarella's holding that mere information disparities do not justify a duty to disclose. See Chiarella, 445 U.S. at 235.  For these reasons, Alexandra's appeal to the Jett test to establish a duty to disclose is unwarranted.

It is clear that Chiarella and Dirks worked a broad change in the law of insider trading that is not limited to outsiders

or tippees.  See, e.g. Chestman, 947 F.2d at 564-65 ("The
traditional theory of insider trader liability derives
principally from the Supreme Court's holdings in Chiarella and
Dirks." (citations omitted)).  Pursuant to the Supreme Court's
directions, under the traditional insider trading theory, one
who trades in a security while in possession of material,
nonpublic information cannot be found to have violated Rule 10b-
5 absent a duty to disclose arising from "a fiduciary or other
similar relation of trust and confidence."  Chiarella, 445 U.S.
at 228; see also Dirks, 463 U.S. at 654.[11]  Because IKON owed no
such fiduciary or other analogous duty to its convertible
noteholders, it follows that IKON had no duty to disclose its
alleged unpublicized intentions to exercise its redemption
rights at a date in the future.

       The absence of a Rule 10b-5 remedy for convertible
noteholders like the plaintiff is tempered by the alternative
protection offered by the contractual terms of the governing
Indenture.  Courts have commonly held that the indenture under
which bonds are issued circumscribes the rights owed to the
noteholders.  E.g., Lorenz, 1 F.3d at 1418 ("A corporation's
obligations toward its debentureholders are defined by the terms
of the indenture, and section 10(b) imposes no additional

---

       [11]  The misappropriation theory, mentioned supra in note 8, provides an
alternative ground for Rule 10b-5 liability that is not applicable to the
facts of this case.

duties."); <u>Broad v. Rockwell Int'l Corp.</u>, 642 F.2d 929, 963 (5th Cir. 1981) (en banc) (finding no Rule 10b-5 liability where the issuer of convertible debentures and its acquirer carried out all of their obligations under the indenture); <u>Occidental Petroleum</u>, 705 F. Supp. at 141 ("[W]here the duties of an issuer . . . to debenture holders are circumscribed by the Indenture Agreement, no extraordinary duties will be implied under the federal securities laws."); <u>see also</u> <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 813-14 (2d Cir. 1985) (affirming summary dismissal of fiduciary duty, contract, and Rule 10b-5 claims where defendant--an issuer of convertible debentures--complied with the requirements of the indenture); <u>Geren v. Quantum Chem. Corp.</u>, 832 F. Supp. 728, 731-34 (S.D.N.Y. 1993) (declining to impose a duty not stated in governing Indenture based on implied duty of good faith and fair dealing), <u>aff'd</u>, 99 F.3d 401 (2d Cir. 1995) (table).  Because Alexandra has not alleged a contract claim, there is no need to survey the obligations IKON owed its noteholders under the governing Indenture.  However, IKON points out that while the Indenture contains various provisions requiring IKON to disclose certain acts (<u>see, e.g.</u>, Indenture §§ 1.06, 7.04, 10.05, 11.05, 12.05, 12.06, 13.06, 14.2), it does not require the kind of disclosure Alexandra contends should have been provided during its negotiations for the repurchase of its Notes.

The Complaint does state that IKON "had an affirmative duty to disclose to [Alexandra] its intention to redeem the Securities." (Compl. ¶ 35.) But this statement is a legal conclusion and therefore need not be credited on a motion to dismiss. See Smith, 291 F.3d at 240; Barile, 386 F. Supp. 2d at 54. Alexandra has not alleged any facts to support the existence of a duty, apart from the debtor-creditor relationship between IKON and its convertible noteholders which does not give rise to fiduciary or similar duties necessary to establish a duty to disclose under Chiarella. Nor has Alexandra asserted any other legal basis for recognizing fiduciary or similar obligations on the part of IKON. Alexandra has thus failed to allege sufficient facts to raise even a plausible argument that IKON had a duty to disclose. See Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1974 (2007). The Section 10(b) and Rule 10b-5 claim is therefore **dismissed** for failure to state a claim upon which relief can be granted.

### III.

Alexandra has also alleged common law fraud. The Court declines to exercise supplemental jurisdiction over this purely state law claim because it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Valencia ex rel. Franco v. Lee, 316 F.3d 299, 304-06 (2d Cir.

2003).   The common law fraud claim is therefore **dismissed without prejudice**.

CONCLUSION

For the reasons explained above, the motion to dismiss the Complaint is **granted**.   The Clerk of Court is directed to enter judgment dismissing the Complaint and to close the case.

**SO ORDERED.**

Dated:    New York, New York
          July _19_ , 2007

John G. Koeltl
United States District Judge